IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT WALTER BONNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:10-CV-2556-N (BF) |
| | § | |
| SHERIFF BOB ALFORD and | § | |
| TONY RAY, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Defendants have filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and, in the alternative, a motion for summary judgment. The findings, conclusions, and recommendation of the Magistrate Judge are as follow:

**Background**

This is a *pro se* prisoner civil rights action brought by Plaintiff Robert Walter Bonner against Johnson County Sheriff Bob Alford and Tony Ray, the former Chief of Security for the Johnson County Jail, under 42 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendment rights. Plaintiff was incarcerated at the Johnson County Jail in January 2008 pending his trial on multiple charges involving sexual contact with children. *See* Plf. Am. Compl. (Doc. 54) at 10; Bonner Aff., Plf. Resp. App. at 2, ¶ 2. Plaintiff was initially held in a "protective custody tank" with other inmates. Bonner Aff., Plf. Resp. App. at 22-23, ¶ 3. On or about March 5, 2009, Plaintiff was moved to a solitary cell in the administrative segregation ("Ad Seg") unit. *Id.* at 22, ¶ 2. Plaintiff

was not provided with notice or a hearing explaining the reasons for his transfer to Ad Seg. *See* Plf. Am. Compl. at 2-3, 10. In Ad Seg, Plaintiff had no dayroom privileges or interaction with other inmates. Bonner Aff., Plf. Resp. App. at 24, ¶¶ 8, 10. The only telephone available was a "roll-around" phone that was frequently broken, and Plaintiff had difficulty communicating with his family members and his attorney. *Id.* at 23-24, ¶¶ 11-12. Also, Plaintiff's cell was "filthy" and smelled like a sewer. *Id.* at 23, ¶ 9. He allegedly requested, but was denied, cleaning supplies. *Id.* Plaintiff remained in Ad Seg for 34 days throughout his trial and sentencing. *See* Plf. Am. Compl. at 2.

Plaintiff's trial began on March 23, 2009. On Sheriff Alford's recommendation, Plaintiff was required to wear a 50,000 volt shock belt and a leg brace under his clothes during his seven-day trial. *See id.* at 5-6, 9; *see also* Alford Aff., Def. App. at 4, ¶ 13. The shock belt left "rug-burn type wounds" on Plaintiff's back, and the restraints caused him other physical pain and psychological distress. Plf. Am. Compl. at 6. Plaintiff ultimately was convicted of six counts of aggravated sexual assault of a child, four counts of indecency with a child, and two counts of inducing a child to engage in sexual conduct or sexual performance. Alford Aff., Def. App. at 1, ¶ 3. He was sentenced to 99 years imprisonment for each of the aggravated sexual assault convictions and twenty years imprisonment for each of the other convictions. *Id.* Plaintiff's convictions and sentence were affirmed on appeal. *Bonner v. State*, No. 10-09-00120-CR, 2010 WL 3503858 (Tex. App. -- Waco Sep. 8, 2010, pet. ref'd).

By this lawsuit, Plaintiff contends that Defendants violated his Fourteenth Amendment due process rights while he was in custody as a pretrial detainee when, without a hearing, he was placed in Ad Seg for 34 days and required to wear a shock belt during his criminal trial. Plf. Am. Compl.

at 4, 5-6, 7, 13. Plaintiff also contends that his administrative segregation and placement in restraints violated his Fourteenth Amendment equal protection rights. *Id.* at 12. Finally, Plaintiff contends that his Eighth and Fourteenth Amendment rights were violated because his Ad Seg cell was not clean; he was denied dayroom privileges; and he was prevented from contacting his family and attorneys. *See id.* at 2. Defendants deny that Plaintiff's constitutional rights were violated and assert the affirmative defense of qualified immunity. *See* Def. Ans. (Doc. 32) at 22. Defendants further contend that Plaintiff failed to exhaust his administrative remedies prior to filing suit, that the lawsuit is frivolous under 28 U.S.C. § 1915(e), and that Plaintiff is "three-strikes" barred.

On initial screening, the District Court *sua sponte* dismissed Plaintiff's claims as frivolous under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See* Judgment (Doc. 7) dated 7/27/2011. Plaintiff appealed that decision, and the Fifth Circuit vacated the dismissal on grounds that it was error to determine that the facts failed to establish a due process violation on the basis of Plaintiff's complaint and the limited record available at such an early stage in the proceedings. *Bonner v. Alford*, 478 F. App'x 80, 2012 WL 1400065 (5th Cir. Apr. 24, 2012). Defendants now move for judgment on the pleadings on grounds that Plaintiff's allegations are insufficient to support a claim for a violation of his constitutional rights. In the alternative, Defendants move for summary judgment on their immunity defense. The issues have been fully briefed by the parties,[1] and the motion is ripe for determination.

---

[1] In a separate pleading, Defendants object and move to strike Plaintiff's Objections to Defendants' Reply to Plaintiff's Objections to Defendants' Motion for Summary Judgment, which the Court construes as a surreply. The Local Civil Rules prohibit the filing of surreplies without leave of court. *See* N.D. Tex. L. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence."). Plaintiff did not obtain leave of court before he filed his Objections. Nonetheless, in the interest of justice, the Court has considered Plaintiff's Objections. Defendant's Motion to Strike (Doc. 69) is denied.

## Legal Standards

A Rule 12(c) motion is governed by the same standards that apply to a Rule 12(b)(6) motion to dismiss. *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). A district court may dismiss a complaint for failure to state a claim "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992) (quoting *Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d 1115, 1116 (5th Cir. 1990). To survive dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.*, 550 U.S. at 550. Where, as here, a defendant seeks dismissal based on qualified immunity, the complaint is subject to a heightened pleading requirement. *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). The plaintiff must allege "particularized facts which, if proved, would defeat a qualified immunity defense." *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989); *see also Pecena v. Martin*, No. 3:11-CV-2325-BD, 2012 WL 3627643, at *2 (N.D.Tex. Aug. 23, 2012). The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). However, conclusory allegations and assertions will not suffice. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. FED. R. CIV. P. 12(d). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.[2] *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Defendants move for summary judgment on their qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 F. App'x 379, 383, 2010 WL 3190709, at *3 (5th Cir. Aug. 12, 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231(2009)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step analysis to determine whether a law enforcement officer is entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*,

---

[2] Defendants object to various evidence submitted by Plaintiff in support of his summary judgment response. Among other things, Defendants object that Plaintiff's evidence is not properly authenticated, constitutes inadmissible hearsay, and is not relevant. Def. Reply at 2-9. The Court is familiar with the standards for competent summary judgment evidence under Fed. R. Civ. P. 56 and other applicable law. *See, e.g.*, FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (conclusory allegations and unsubstantiated assertions are not competent summary judgment evidence); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (same). The Court has properly disregarded that evidence which does not constitute competent summary judgment proof. Moreover, none of this evidence, even if considered by the court, affects the disposition of the motion. Defendants' objections to Plaintiff's summary judgment evidence are overruled as moot. *Kirby v. SBC Serv., Inc.*, 391 F.Supp.2d 445, 456 (N.D. Tex. 2005).

536 U.S. 730, 736 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* at 818.

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

## Analysis

### Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims arising out of any alleged unsanitary condition of his Ad Seg cell, the denial of cleaning supplies or dayroom privileges, and the inability to communicate with his attorney and family members because of the inoperable roll-around phones. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

6

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998). Exhaustion is mandatory and strictly construed. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). The Johnson County Jail requires a two-step grievance procedure for inmates challenging the conditions of their confinement. Alford Aff., Def. App. at 3, ¶ 7. At the first step, an inmate completes an "Inmate/Resident Grievance Form" describing his specific grievance. *Id.* The jail's grievance coordinator reviews the form and responds to the inmate. *Id.* If the inmate is dissatisfied with the response, he may file a "Step 2 Inmate/Resident Grievance Form." *Id.* An inmate must pursue his grievance at both steps in order to exhaust his administrative remedies. *Alexander*, 351 F.3d at 630 ("[Prisoners] must exhaust such administrative remedies as are available, whatever they may be.").

The summary judgment evidence shows that Plaintiff has not exhausted his administrative remedies with respect to any complaints regarding unsanitary conditions of his Ad Seg cell, the denial of cleaning supplies, the denial of dayroom privileges, and problems with the roll-around phone that impaired his ability to communicate with his attorney and family. The record contains only three grievance forms filed by Plaintiff after he was transferred to Ad Seg. In the first, a Step 1 grievance dated March 9, 2009, Plaintiff objects that he does not "qualify for classification as an inmate that requires segregation." Def. App. at 18. The second grievance, which is also a Step 1 grievance dated March 17, 2009, merely reurges his prior objection to the fact of his segregation. *Id.* at 19. The last grievance, dated March 19, 2009, is a Step 2 grievance wherein Plaintiff

complains that he has been improperly placed in "isolated confinement." *Id.* at 20. There is no record of any grievance involving the allegedly unsanitary condition of his cell, denial of cleaning supplies, lack of dayroom privileges, or problems with the roll-around phone. Plaintiff thus failed to exhaust his administrative remedies with respect to such conditions.

Plaintiff has not raised a valid excuse for failing to exhaust his administrative remedies. His argument, based on *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) that he "is not required to grieve every little issue related to the confinement," misconstrues the law. In *Johnson v. Johnson*, the Fifth Circuit remarked only that "prisoners need not *continue* to file grievances about the same issue." *Johnson*, 385 F.3d at 521 (emphasis added). The Court did not absolve prisoners of their obligation to file a grievance with respect to a particular condition in the first instance. In this case, Plaintiff never once exhausted his administrative remedies with respect to the identified conditions before filing this lawsuit. Plaintiff's failure to exhaust his administrative remedies thus precludes any subsequent litigation arising out of those conditions of confinement. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims arising out of the alleged unsanitary conditions of his Ad Seg cell, the denial of cleaning supplies, the denial of dayroom privileges, and problems with the roll-around phone.

### Due Process Violations

Plaintiff's due process claims arise from conduct that occurred while he was housed as a pretrial detainee at the Johnson County Jail. Consequently, the Due Process Clause of the Fourteenth Amendment protected Plaintiff's rights. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (en banc) (pretrial detainee's rights "flow from both the procedural and substantive due process

8

guarantees of the Fourteenth Amendment").[3] Under the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

The legal standard applicable to Plaintiff's claims turns on the classification of those claims as an attack on a "condition of confinement" or as an "episodic act or omission." *Hare*, 74 F.3d at 644. Conditions of confinement claims are analyzed under the reasonable-relationship test announced by the Supreme Court in *Bell*. Under the *Bell* test, a constitutional violation exists only if the court determines that the complained-of condition is not reasonably related to a legitimate, non-punitive governmental objective. *See id.* at 640. Alternatively, when the complained-of harm involves an episodic act or omission, the plaintiff must show that the individual defendant acted with subjective deliberate indifference to his or her constitutional rights. *See id.* at 649 n. 4. Because Plaintiff disavows any intent to bring his claims as a challenge to any "episodic acts or omissions," Plf. Resp. at 7, the Court applies the *Bell* test.[4]

The gravamen of Plaintiff's Fourteenth Amendment claim is that he was moved to Ad Seg and kept there for 34 days, without a predeprivation notice or a hearing. In considering whether this

---

[3] To the extent Plaintiff's claims arise from conditions of his confinement that continued after the date of his conviction, the Eighth Amendment's prohibition against cruel and unusual punishment may apply. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (conditions under which convicted prisoners are confined are subject to scrutiny under the Eighth Amendment); *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (to establish an Eighth Amendment violation regarding conditions of confinement, plaintiff must establish that (1) the deprivation alleged was objectively, sufficiently serious and (2) jail officials acted with subjective deliberate indifference to plaintiff's health or safety). Because "[a] pretrial detainee's due process rights are said to be as least as great as the Eighth Amendment protections available to a convicted prisoner," *Hare*, 74 F.3d at 639, the different standards applicable to Plaintiff's claims arising after his conviction do not dictate a different result. If anything, the Fourteenth Amendment afforded Plaintiff greater protection as a pretrial detainee than he was entitled to under the Eighth Amendment as a convicted prisoner. *Id.*

[4] Even if the Court construed Plaintiff's complaint as stating a claim for an episodic act or omission, Plaintiff has failed to make any argument – much less adduce any evidence – that would raise a fact question as to Defendants' deliberate indifference.

condition of confinement resulted in the deprivation of liberty without due process of law, the Court focuses its inquiry on whether the condition or restriction was punitive because the State may not punish pretrial detainees. *Bell*, 441 U.S. at 535. The fact that "detention interferes with the detainee's understandable desire to live as comfortably as possible" does not equate to punishment. *Id.* at 537. However, an arbitrary or purposeless restriction on a pretrial detainee leads to the inference that the restriction is punitive. *See Olgin v. Darnell*, 664 F.2d 107, 109 (5th Cir. 1981). "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment." *Id.* (quoting *Bell*, 441 U.S. at 540).

The summary judgment evidence establishes that Plaintiff's transfer to Ad Seg was for his own safety and for the proper administration and security of the jail. In a sworn affidavit, Sheriff Alford explains the reasons for Plaintiff's placement in Ad Seg:

> Plaintiff was charged with numerous counts involving sexual contact with children. Among the jail population, there are certain offenses that place inmates at a greater risk for their safety. Inmates such as Plaintiff, who are charged with child sexual offenses, are likely to be attacked by other inmates or cause disruption if left unprotected in the general population, or even in segregated housing that still allows contact with other inmates. Therefore, the nature of Plaintiff's charges placed him at risk of harm and attack from other inmates and threatened the orderly administration of the jail. The likelihood for harm or disruption increases as an inmate's trial approaches. As the window of the inmate's incarceration closes, the other inmates are often prompted to act out against the alleged child sex offender before losing the opportunity to do so. The alleged child sex offender also may become desperate to take action to delay or avoid the trial. Such actions include attempting escape, suicide, or physically harming themselves or others to avoid or delay the trial. As Plaintiff's trial approached, the potential for harm to Plaintiff by other inmates increased substantially as did the possibility that Plaintiff might attempt to cause disruption or to escape. Plaintiff was placed in

10

> administrative segregation shortly before his criminal trial began based on the nature of the criminal charges pending against him in an effort to keep him safe, prevent any undo [sic] confrontations and incidents with other inmates, and to maintain the security and orderly administration of the Johnson County Jail. In fact, on March 27, 2009, Plaintiff complained to jail personnel that an unknown inmate had approached his cell during the evening of March 26, 2009 and threatened to slit his throat. Keeping inmates at the Johnson County Jail safe was always an objective at the jail while I was employed there. Plaintiff was not placed in administrative segregation for the purpose of punishment, nor was Plaintiff's time in administrative segregation ever continued for the purpose of punishment. Plaintiff remained in the administrative segregation throughout his criminal trial, following his conviction, and until he left the jail on April 8, 2009.

Ray Aff., Def. App. at 33-34, ¶ 3; *see also* Alford Aff., Def. App. at 2, ¶ 4. This explanation establishes that the decision to move Plaintiff to Ad Seg was not arbitrary or purposeless. Rather, the decision was reasonably related to the legitimate governmental objectives of inmate safety and jail security. Prison administrators are accorded significant deference with respect to the adoption and execution of policies and practices that in their judgment are needed to "preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. A court should not substitute its judgment on matters of institutional administration and security for that of the persons trained and charged with running the prison. *Id.* at 548. The Court thus determines that no constitutional violation occurred. *Serton v. Sollie*, No. 02-61010, 2003 WL 22849840, at *3 (5th Cir. 2003) (no constitutional violation where summary judgment evidence showed that inmate's placement in administrative segregation without pre-deprivation notice and hearing was for his own protection and was not punishment for a disciplinary violation); *Gonzales v. Lopez*, No. C-08-008, 2008 WL 724247, at *5 (S.D. Tex. Mar. 17, 2008) (citing *Jones v. Brown*, 300 F.Supp.2d 674, 679 (N.D. Ind. 2003) ("Not every placement of a pre-trial detainee in segregation constitutes punishment,

and the segregation of a pre-trial detainee for legitimate security reasons without a hearing does not violate due process.")).

Plaintiff has not adduced any competent summary judgment evidence showing that Defendants intended to punish him by transferring him to Ad Seg. Plaintiff argues that Defendants' intent to punish can be inferred from a wide-spread culture of retaliation, harassment, and intimidation that permeates the Johnson County criminal justice system. Plf. Resp. at 14-15. He further suggests that the District Attorney's office somehow directed Defendants to tranfer him to Ad Seg because "[t]he District Attorney's office is the only entity that truly stands to benefit." *Id.* at 17. But,"[m]ere conclusory allegations of retaliation will not withstand a summary judgment challenge." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Plaintiff offers nothing but speculation and his subjective belief in support of his argument that Defendants' decision was motivated by retaliatory animus. Without more, Plaintiff cannot overcome the defense of qualified immunity at the summary judgment stage.

Nor has Plaintiff adduced any evidence sufficient to raise a fact question as to whether the decision to move him to Ad Seg was arbitrary or purposeless. Instead, Plaintiff denies that he ever contemplated escaping or harming himself and argues that he was safer in the protective custody tank where other inmates could look out for him. Bonner Aff., Plf. Resp. App. at 25, ¶ 24. He also contends that all the inmates in protective custody were charged with similar offenses and, thus, the nature of his charges did not place him at risk of harm as his trial date approached. *See id.* Other than his unsubstantiated assertions that "[t]he nature of Plaintiff's charges were no different than any other inmate housed in protective custody[,]" *id.*, there is no competent summary judgment evidence that the other inmates in the protective custody tank were charged with numerous counts of

12

aggravated sexual assault of a child, indecency with a child, and inducing a child to engage in sexual conduct or sexual performance. There is no evidence to rebut Defendants' conclusion that the nature of the specific charges against Plaintiff placed him at risk of an attack or that the risk increased as his trial date approached. It is undisputed that Plaintiff was threatened with harm after his trial began and as "the window of his incarceration" at the Johnson County Jail was closing.

Plaintiff appears to rely on Texas Administrative Code Section 271.1(a)(1) to argue that he was entitled to remain in the protective custody tank as "the least restrictive housing available." 37 TEX. ADMIN. CODE § 271.1(a). However, Section 271.1(a) permits jail officials to classify inmates based on various risk factors, including their current offense or conviction. *Id.* Also, Section 271.1(a)(11) provides that "inmates who require protection or those who require separation to protect the safety and security of the facility may be housed in administrative separation." *Id.*, § 271.1(a)(11). Section 271.1(a) does not provide any basis for inferring that the decision to transfer Plaintiff to Ad Seg was punitive or arbitrary. Plaintiff also appears to argue that an improper motive for his administrative segregation can be inferred from the fact that the paperwork documenting the reasons for his administrative segregation were not created until more than a week after the initial transfer. However, a careful examination of the evidence belies this suggestion. In an inmate grievance form dated March 6, 2009, Plaintiff stated that "I've been informed that I am a security threat to this jail." Def. App. at 18. Defendants' reasons for transferring Plaintiff to Ad Seg have never waivered. *See id.* at 7-16, 21, & 33-34, ¶ 3. To the extent Plaintiff contends that his rights were violated because Defendants failed to properly review his housing assignment under state law, his arguments are without merit. The summary judgment evidence establishes that Plaintiff's custody assignment was reviewed numerous times while he was in Ad Seg. *Id.* at 7-16.

Plaintiff further contends that Sheriff Alford's recommendation that the trial court restrain Plaintiff during his criminal trial was "a continuation of the psychological duress inflicted upon him by his confinement to a solitary environment." Plf. Am. Compl. at 6. The Court initially observes that Defendants cannot be liable for any constitutional violation arising out of the use of restraints at trial because the decision to restrain Plaintiff during his trial lay solely within the sound discretion of the trial court. *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir. 1976); *see also Passman v. Blackburn*, 652 F.2d 559, (5th Cir. 1981) (degree of security exercised over defendant is within trial judge's discretion). Further, to the extent Defendants could be liable for placing Plaintiff in the shock belt and leg brace during transportation to and from his trial, Plaintiff has not shown that Defendants did so with an intent to punish. *Moore v. Frasier*, 104 F. App'x 385, 386 (5th Cir. 2004) (requiring pretrial detainee to wear restraints while in recreation yard did not violate the Constitution since it was not for purposes of punishment). Sheriff Alford explained that he recommended that Plaintiff wear the shock belt and leg brace due to the nature of the charges pending against him and security concerns which existed as a result of the charges. Alford Aff., Def. App. at 4, ¶ 13. Plaintiff adduced no evidence to rebut this explanation. Thus, no constitutional violation occurred. *Moore*, 104 F. App'x at 386; *Mobley v. Headrick*, No. 2:08-CV-129, 2009 WL 3063396, at *7 (E.D. Tex. Sep. 22, 2009) (no constitutional violation where jail officials placed inmate in the separation cell and required restraints whenever inmate left cell because of legitimate safety and security concerns rather than for purposes of punishment).

Plaintiff has not presented any competent summary judgment evidence showing that the Defendants placed him in Ad Seg and required him to wear restraints for the purpose of punishment, as opposed to legitimate safety and security concerns. As the party with the burden to overcome the

asserted qualified immunity defense, Plaintiff has failed to carry his burden to raise a genuine issue of material fact on his due process claims. Defendants are therefore protected by qualified immunity and entitled to summary judgment.

## Equal Protection Violation

Plaintiff also contends that his administrative segregation and the use of restraints during trial resulted in a violation of his rights under the Fourteenth Amendment's Equal Protection Clause. To establish an equal protection violation, Plaintiff must demonstrate that Defendants intentionally discriminated against him because of his membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Plaintiff fails to identify any evidence that he is a member of a protected class or that Defendants intentionally discriminated against him. For Plaintiff to succeed on his assertion that he is a member of a "class of one," he must show that he was intentionally treated differently from other similarly situated inmates and that there is no rational basis for the difference in treatment. *Bryan v. City of Madison*, 213 F.3d 267, 276-77 (5th Cir. 2000). Stated differently, Plaintiff must show that standards were applied differently to him than to others similarly situated or, alternatively, that a government policy or procedure was selectively enforced against him. *Id.* This requires showing "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* Here, the summary judgment evidence fails to show that any other inmate was similarly situated to and treated differently than Plaintiff. Nor do Plaintiff's unsubstantiated assertions that Defendants were motivated by a desire to prevent the exercise of Plaintiff's constitutional rights establish an equal protection violation. Plaintiff has failed to carry his burden to raise a genuine issue of material

fact on his equal protection claims. Defendants are therefore protected by qualified immunity and entitled to summary judgment.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the District Court GRANT Defendants' Motion for Judgment on the Pleadings and, in the alternative, Motion for Summary Judgment (Doc. 58). The District Court should DISMISS this case with prejudice.

Defendant's Motion to Strike Plaintiff's Objections to Defendants' Reply to Plaintiff's Objections to Defendants' Motion for Summary Judgment (Doc. 69) is DENIED.

SO RECOMMENDED, December 16, 2013.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).